Yvette C, Sterling, Esq. Bar#044471997
Sterling Law Firm
1818 Old Cuthbert Road, Ste. 202 B
Cherry Hill, NJ 08034
Tel: 856-429-6666
Fax: 609-482-8196 Fax

Attorneys for Plaintiffs

## UNITED STATES DISTICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **YEWANDE OTEH, CHIDI OTEH, M.O.** **(Minor Child), YVETTE STERLING,** **DR. OLUKEMI FAJOU** Plaintiff | ) ) ) ) ) | PLAINTIFFS COMPLAINT |
| v. | ) ) | |
| **AMERICAN AIRLINES, INC.,** **and US AIRWAYS GROUP, INC** Defendants | ) ) ) ) ) ) | |

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME Plaintiffs, Yewande Oteh, Chidi Oteh and M.O. (minor child), Yvette Sterling, Esq., and Dr. Olukemi Fajolu, file this original complaint seeking damages regarding the Defendants and the rights and obligations of passengers and defendants under federal law concerning the actions upon employees on an aircraft in flight.

## I.    INTRODUCTION

Plaintiffs file this complaint against the above named Defendants, American Airlines Inc., ("American") and U.S. Airways as follows:

1. This is an action for damages brought by the above named Plaintiffs for Negligence, Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, Negligent Hiring (Flight Attendant "Melanie" Masters), and physical and mental injuries sustained due to the actions of the above named defendants on American Airlines Flight 832 on August 14, 2015 during inflight travel from Philadelphia, Pennsylvania to Montego Bay, Jamaica ("MBJ"). Plaintiffs were traveling to Montego Bay for their wedding.

2. Defendants knowingly and willfully discriminated against Plaintiffs by failing to provide Plaintiffs the support and services required to obtain the benefits of safe airway travels in a place of public accommodation.

3. The willful and wanton conduct by American Airlines Flight Attendant Melanie Masters, on Flight 832, which was observed by others, has caused a lifetime of damage.

4. Plaintiff further asserts that defendants failed to implement proper policy provisions to protect Plaintiffs against the conduct of its employees.

5. Plaintiffs bring this action seeking judgment from the court for damages sustained and continued emotional and physical distress. The claims for damages alleged by each of the Passenger Plaintiffs exceed Seventy Five Thousand Dollars ($75,000.00), exclusive of interest, costs and attorney's fees.

6. Jurisdiction and venue are proper in this District pursuant to the Convention for the Unification of Certain Rules Relating to International Transport by Air, S. Treaty Doc. No. 106-45 (2003) ("Montreal Convention") Article 33.

## II.     PARTIES

7.     Plaintiff Yewande Oteh is a resident of Cherry Hill, New Jersey was a passenger on the Subject Flight.

8.     Plaintiff Chidi Oteh is a resident of Boston, Massachusetts and was a passenger on Subject Flight.

9.     Plaintiff M.O. is a resident of Boston, Massachusetts and was a passenger on Subject Flight.

10.     Plaintiff Yvette C. Sterling, Esq. a resident of Cherry Hill, New Jersey is the mother of Yewande Oteh and the person who had paid for the dress and the tickets and the wedding along with Dr. Olukemi Fajolu

11.     Dr. Olukemi Fajolu a resident of Lakeland< Florida was the person who had helped to finance the wedding and the person who had to fly at short notice forgoing her responsibilities in order to obtain a replacement dress in time for the wedding.

12.     Defendant American Airlines, Inc. ("American") is a corporation duly organized under the laws of the State of Delaware, with its principal place of business in Texas, however through the internet and other advertisement and solicits passengers from all over the country and in particular in New Jersey. Service of process may be had upon said defendants by serving its registered agent for service of process.

13.     Defendant US Airways Group, Inc. ("US Airways") is a Delaware corporation headquartered in Tempe, Arizona, that has since this incident merged with American Airlines.

3

14.     Defendants take in more than $13 billion in revenue, and transport millions of passengers to approximately 200 locations worldwide.

### III.     JURISDICTION AND VENUE

15.     **This Court has jurisdiction pursuant to 28 USC §§ 1331 and 1332. This Court's jurisdiction over the related New Jersey common law claims is conferred pursuant to the Judicial Improvements Act of 1990, 28 U.S.C. § 1367.**

16.     The defendants are engaged in interstate commerce, and their activities substantially affect interstate commerce, and commerce in each of the Plaintiffs States, and where the tickets for the flight were purchased.

17.     Venue is proper in Camden County New Jersey where one of the Plaintiff's maintain a permanent residence.

18.     Venue is proper under Section 12 of the Clayton Act, 15 U.S.C. §§ 22. This court also has personal jurisdiction over each defendant. Both defendants are found and transact business in this judicial district.

### IV.     FACTS COMMON TO ALL CLAIMS

19.     American is a commercial air carrier engaged in the business of transporting fare-paying passengers on regularly scheduled flights worldwide.

20.     US Airways is also a commercial air carrier engaged in the business of transporting fare-paying passengers on regularly scheduled flights worldwide.

21.     On August 14, American operated Flight 832 ("Flight 832") between Philadelphia, Pennsylvania and Montego Bay, Jamaica.

4

22.     American was the employer of the crew and flight attendants on American Flight 832 from Philadelphia, Pennsylvania to Montego Bay, Jamaica.

23.     American was responsible for the actions of the flight crew and flight attendants on Flight 832.

24.     On August 14, 2015, the passengers, Plaintiffs were fare-paying passengers on American Flight 832.

25.     On August 14, 2015 upon checking in for their flights, Plaintiffs explained that they were traveling to Montego Bay, Jamaica for their wedding.

26.     Upon further discussion, the ticket agent instructed Plaintiff Yewande Oteh that her wedding gown should not travel in her checked luggage.

27.     Plaintiffs were instructed by the ticket agent that there would be a closet to hang the dress up to avoid any damage or wrinkles to the dress.

28.     Plaintiff, at the instruction of the American Airlines ticket agent, removed her wedding gown from the checked luggage, and hand carried it to the gate in order to put it in the cabin closet on the aircraft; as instructed by the American Airlines ticket agent.

29.     On August 14, 2015 upon embarking onto the plane of American Airlines flight 832, Plaintiff Yewande Oteh was carrying her then nine month old baby, M.O., and her all white wedding gown, secured in a white carrier bag in the other hand which was the acceptable allotted piece of luggage for an individual passenger.

30.     On August 14, 2015 once on the plane, Plaintiff was attempting to find the closet to hang her dress, and then take her seat.

31.     Plaintiff sought to discuss with her flight attendants about the issue of the closet, which was the most suitable place for her wedding gown, based on the instructions of the ticket agent.

32.     American Airlines Flight Attendant "Melanie" became indignant and agitated, and began to talk to Plaintiff in a hostile aggressive way, instructing her that the closet space was not for passengers.

33.     Plaintiff, alarmed by the conduct of the flight attendant's aggressiveness and agitation towards Plaintiff, attempted to tell the American Flight Attendant "Melanie" that the American Airlines ticket agent assured her that she would be able to hang up her wedding gown in a closet.

34.     American Airlines Flight Attendant "Melanie" became more agitated and instructed Plaintiff in an aggressive manner that there was no closet for passengers. Said Flight Attendant then, visibly annoyed, told Plaintiff to search all the overhead bins in order to find space for her wedding gown.

35.     Plaintiff was alarmed and confused by the treatment she was receiving especially since she only removed her wedding gown from her checked luggage at the instructions of the American Airlines ticket agent.

36.     Plaintiff Yewande Oteh followed Flight Attendants instructions, and opened the first bin located in first class to see if it was occupied.

37.     To Plaintiff's surprise and happiness, the bin was *completely empty*. Plaintiff alleges that the entire cabin bin contained no articles, luggage, clothing, or airline equipment.

38.     Plaintiff decided that this would be the perfect bin to store her gown, given the fact that it was empty, and forgo looking for more bin space.

39.     Plaintiff asked Flight Attendant if it was ok to store her dress in the bin, as she wanted to follow all rules given her fear that the flight attendant may retaliate against her.

40.     American Flight Attendant "Melanie," once again in an aggressive and frustrated manner, approached Plaintiff in what seemed to be her attempt to begrudgingly assist Plaintiff.

41.     While attempting to assist Plaintiff, Flight Attendant went on the right side of Plaintiff, and asked Plaintiff "to stop her attitude."

42.     Flight Attendant placed her body close to Plaintiff's while talking in an aggressive manner to Plaintiff.

43.     Plaintiff was embarrassed and shocked by the conduct of Flight Attendant, and instructed the Flight Attendant to refrain from such behavior and that she was technically "working for the passengers in a service position."

44.     Flight Attendant, upset by Plaintiff's comment regarding her work responsibilities, replied in an aggressive manner placing her body square in front of Plaintiff explaining that she was no longer wanted in First Class, and that her dress would be just fine.

45.     Plaintiff was once again embarrassed and fearful of Flight Attendants actions and was placed in a hostile travel environment.

46.     Plaintiff was humiliated in front of the other passengers and her infant son.

47.     Plaintiff Yewande Oteh told the Flight Attendant that she would lodge a complaint regarding the disparate treatment Plaintiff was being subjected to.

48.     Flight Attendant responded by laughing at Plaintiff.

49.     Plaintiff took her seat to avoid any further unwarranted aggression by Flight Attendant.

50.     Once Plaintiff was in her seat, she awaited the arrival of her husband who had been assisting the American Airlines ground crew disassemble the infant carrier.

51.     Once Plaintiff's husband arrived at his seat, Plaintiff explained her fear to her husband, and told her husband where the dress was placed, as both could see it clearly from their seats.  Plaintiff Chidi Oteh explained to his wife that said Flight Attendant made disparaging comments to him once he boarded regarding his wife.

52.     Plaintiff was placed in fear given the hostility, and was also fearful that Flight Attendant may take out the aggression on herself, her wedding gown, or her family.

53.     Plaintiff was seated in a row within eye view of the entire first class cabin, and more specifically the cabin holding her wedding gown.

54.     Plaintiff Yewande Oteh, with a clear view of the first class cabin and the overhead bin holding her white wedding gown observed American Airlines Flight Attendant "Melanie" enter the bin that was holding her wedding gown.

55.     Plaintiff observed said flight Attendant open the bin with her right hand, while something was occupying her left hand.

56.     Plaintiff unable to get out of her seat due to the seat belt sign remained in her seat.

57.     Plaintiff, fearful of any interaction between herself and said Flight Attendant decided to remain in her seat.

58.     Plaintiff Yewande Oteh was also told by American Airlines Flight Attendant "Melanie" that she was not entitled to enter the first class cabin.

59.     Plaintiff instructed her husband what she saw, and they both decided to just continue to keep an eye out as they were with their infant son, and fearful of the Flight Attendants previous aggressive conduct.

60.     Plaintiff's anxiety and uneasiness only escalated once defendants entered the bin holding her dress. Plaintiff felt unable to enter the first class bin to check on her dress, as she was told by her Flight Attendant that she was not able to enter the first class bin and was not wanted there.

61.     Plaintiff Chidi Oteh attempted to calm his wife down while assisting with the care of their infant son.

62.     Thirty to forty minutes later, Plaintiff Yewande Oteh and Chidi Oteh both witnessed  American Flight Attendant "Melanie" along with an African American Male Flight attendant open the first class overhead bin holding Plaintiff's wedding gown slightly, before regrouping at the front of the aircraft with a third flight attendant for what Plaintiff assumed, was about her wedding gown.

63.     This only heightened Plaintiff's mental anguish resulting in Plaintiff feeling sick, anxious and experiencing a severe headache.

64.     Plaintiff alleges that it was her belief that the flight attendants were placing something in the bin and making fun of Plaintiff and her wedding gown.

65.     Plaintiffs maintained keeping an eye on the first class overhead bin holding the wedding gown in order to take note of any other actions of defendants.

66.     Plaintiff Yewande Oteh and Plaintiff Chidi Oteh observed no other human being enter the first class overhead bin holding her wedding gown other than said flight attendants.

67.     Plaintiffs remained in their seats in their seats once Flight 832 landed, even after the seat belt sign was turned off, as Plaintiff Yewande Oteh insisted that her and her husband keep a watch full eye on the first class overhead bin holding their wedding gown.

68.     Plaintiffs were able to successfully view the overhead bin all throughout the departing of passengers from the aircraft.

69.     Plaintiff Yewande Oteh and Chidi Oteh were the last to exit the aircraft, so that their infant son was not pushed or shoved by any other passengers. While waiting to exit the plane, Plaintiffs were observant of the overhead bin holding the wedding gown as to make sure no one went in and took it while exiting.

70.     Upon exciting the aircraft, Plaintiff observed American Flight Attendant "Melanie" directly under the first class overhead bin holding her wedding gown along with an American Airline Pilot standing directly next to American Airlines Flight Attendant "Melanie" on her right side.

71.     Plaintiff Yewande Oteh, still fearful of the flight attendant exited the plane so as to remove herself from any hostile situation that may ensue. Plaintiff's only concern was making sure her wedding dress was in the same condition as when she boarded the plane, especially given the actions witnessed during flight.

72.     Plaintiff Chidi Oteh exited the plane to put the bags down before going back for the wedding gown, which was still in plain view of Plaintiff Yewande Oteh as well as other Montego Bay Jamaica Sangster Airport crew employees. Plaintiff Yewande Oteh and asked Plaintiff Chidi Oteh to retrieve the dress due to the presence of the Flight Attendant and Co-Pilot.

73.     Plaintiff Chidi was denied re-entry onto the flight by American Flight Attendant "Melanie." Flight Attendant "Melanie" along with the co-pilot also refused to retrieve the dress for Plaintiffs despite being directly under the first class overhead bin holding the wedding gown.

74.     Plaintiffs, being refused any assistance from American Airlines Flight Crew for flight 832, asked one of the American Airlines Montego Bay Jamaica crew members from Sangster Airport to retrieve the wedding gown from the American Airline Aircraft.

75.     Said employee boarded the aircraft to retrieve the wedding gown, while Plaintiffs observed.

76.     Plaintiffs, along with other MBJ airport workers observed the "MBJ" worker remove the dress from the bin with utter shock and confusion.

77.     Plaintiffs, along with others, observed the "MBJ" worker ask American Flight Attendant "Melanie" what had happened to the dress. Plaintiffs observed American Flight Attendant "Melanie" smirk and say "something must have spilled inside of the wedding bag."

78.     Plaintiff, along with other witnesses, observed American Flight Attendant Melanie rush to the back of the plane; the Pilot quickly entered the cockpit.

79.     Once Plaintiffs were handed the bag, they discovered that the bag which held the white wedding gown was partially covered with a purple substance.

80.     Plaintiffs immediately opened the bag and to their utter disbelief and horror observed the outside of the wedding gown was smeared with a red substance, and the inside of the wedding gown was completely covered with a red liquid.

81.      It appeared to all that the damage done on the inside of the dress was the most extensive, and appeared to have seeped through the bag which caused the different discoloration between the wedding gown and the bag.

82.     It was visible to all who viewed the gown that a red substance had been placed on the inside of the dress, and that the purple substance on the bag was only the residual of the substance leaking out of the gown.

83.     Plaintiffs immediately smelled the dress and realized that the red substance was red wine. Plaintiff never placed anything inside of the white bag holding the white wedding gown. Plaintiffs never purchased red wine either in the airport or during in-flight service.

84.     Plaintiff observed the bin was completely empty upon placing the dress there upon boarding the plane. This observation was supported by the American Airlines MBJ employee who stated nothing was in the bin. Said MBJ worker also stated that no red substance could be seen in the bin itself.

85.     There was absolutely no object located in the bag once it was opened in front of American Airlines crew members.

86.     For additional clarification, said American Airlines "MBJ" employee re-entered the plane again for further review of the overhead bin and assured Plaintiffs and other American Airlines crew members that the bin itself was empty and dry.

87.     Plaintiffs were aware of what took place given the acts they witnessed while aboard the plane.

88.     Plaintiff had witnessed Flight Attendant "Melanie" egregiously destroy her wedding gown.

89.     Plaintiff was unable to stop the actions of the Flight attendants.

90.     Plaintiff could not have imagined the destruction that actually took place as it completely shocked Plaintiffs and other MBJ crew employees.

91.     Plaintiffs immediately asked to speak with the supervisor and flight attendants and were told that they had to prepare for another flight which was taking off within the hour.

92.     Plaintiffs remained sick, anxious, scared, distraught, overwhelmed, and humiliated at the reckless, careless, and outrageous conduct of the Flight Attendants. Plaintiffs were now told that the plane was to be prepped for turnaround service.

93.     Plaintiff Yewande Oteh's utter despair and anxiety already brought on by the actions she had experienced while traveling on the plane were exacerbated by what she was now experiencing at the hands of defendants.

94.     Plaintiff Yewande Oteh once again became physically ill at the events taking place. Plaintiffs asked to speak to the American Airlines Flight Attendants on

Flight 832 regarding the incident, and were told that this would not be possible as the flight needed to depart soon.

95.    Plaintiffs were able to eventually find the "MBJ" Airport Police. Upon observing the gown, hearing the story, and observing the Plaintiffs they determined that the actions of the American Airline Flight Attendant employed by defendants deserved further attention.

96.    Plaintiff Yewande Oteh, with her wine stained wedding gown, along with two MBJ Airport Police Officers walked back towards the gate to obtain a statement from the American Airlines Flight attendants as well as other witnesses.

97.    The "MBJ" police officers of Montego Bay Jamaica Sangster International Airport were able to call back the flight which was in the process of departing and obtain a statement from the American Flight Attendant "Melanie" employed by defendants. Statements by other Flight Attendants originally on flight 832 were witnessed and heard as well.

98.    The statement given to the "MBJ" Sangster Police officer were quickly recorded and written down, along with a statement by Plaintiffs.

99.    Plaintiff was humiliated in front of passengers, and crew members at the "MBJ" Sangster International Airport.

100.   After the initial landing at "MBJ" Sangster International Airport, Plaintiffs spent the next four hours at the airport giving statements and submitting themselves to the "MBJ" Sangster International Police Officers for pictures and questioning regarding the event.

101.     Plaintiffs had over 80 family and friends from all over the world flying in to Montego Bay, Jamaica solely for their wedding.

102.     Plaintiffs' grandparents, who are native Jamaicans and very close to Plaintiff Yewande Oteh had planned certain events on the day of arrival that were canceled due to the actions of the defendants.

103.     Plaintiff Yewande Oteh remained physically and emotionally ill over the next week as she dealt with the pain, shock and mental anguish of the actions of defendants.

104.      This was in addition to the physical and emotional injury suffered during the event itself.

105.     Plaintiff suffered severe diarrhea, dehydration and depressive symptoms.

106.     Plaintiff, Yewande Oteh, had to cancel plans she had made for months prior to this event because she was physically and mentally unable to take part.

107.     Plaintiff was physically unable to enjoy all the guests and family that attended the wedding in the manner she had hoped because she was physically and mentally unable to.

108.     Plaintiff Yewande Oteh's sister became emotionally distressed at the news.

109.     Plaintiff's sister and best friend had an itinerary that had to be canceled in part and supplemented in part due to the actions of defendants.

110.      Plaintiff spent the next few days trying to look for a replacement dress in Montego Bay Jamaica, despite being mentally and physical ill, as the dress which was destroyed at the hands of defendants was absolutely unwearable and

unfixable.  Plaintiff's attempts were unsuccessful as Montego Bay Jamaica is not a place to purchase wedding gowns equivalent to the one purchased by Plaintiffs.

111.   Plaintiffs attempt to rectify the devastating actions of defendants took valuable time away from the wedding festivities, family activities and events that are unable to be replaced.

112.   Plaintiff's family hired a cleaner to come to the hotel to assess the damage. According to the cleaner, any attempt to have the dress presentable for a wedding would take over a week. The dress would not be able to be returned in time for the wedding.

113.   Plaintiff was unable to look at the dress without crying, getting emotionally distraught and severely saddened.

114.   Plaintiff's sister, distraught and shocked at the events that took place, traveled immediately back to Fort Lauderdale Florida upon her landing in Montego Bay Jamaica in order to find a dress for Plaintiff.

115.   Plaintiff's sister, who is an Orthopedic Surgeon, had to forgo work in order to assist in finding a wedding gown in time for the special wedding day for Plaintiffs.

116.   Plaintiff's sister was able to buy a few dresses in haste that were unfortunately not returnable. Plaintiff's sister was unable to leisurely take her time to look for a dress. Plaintiff was unable to try any of the dresses on, or be fitted and measured in time for her big day.

117.   Plaintiff, Yewande Oteh, was unable to travel back to Florida with her sister as she was mentally and physically unable to travel.

118.     Plaintiff was also terrified that she would encounter the American Airlines Flight

Attendants who inflicted the outrageous, unexpected and unwarranted tortious

damage to her.

119.     Through no fault of their own, Plaintiffs were prevented from the full experience

of their wedding day due to the vicious actions by Defendants.

120.     Plaintiff spent years dreaming about this wedding, and having this wedding in

Montego Bay Jamaica, where her grandparents live.

121.     Plaintiff, a recent law grad,  looked long and hard for a wedding gown in the

middle of law school finals, and most recently the bar exam.

122.     Through no fault of their own, Plaintiffs were seriously injured, including

physical pain and suffering, loss of capacity for the enjoyment of life, mental

anguish, medical treatment, loss of income, and other damages.

123.     The time Plaintiff and her family spent to find the perfect dress was valuable and

priceless.

124.     Plaintiff's mother, who happens to be the attorney of record, paid spent over

$10,000.00 in in order to make the wedding special for Plaintiff, her family and

her guests and instead of properly entertaining her guests and organizing the

balance of the wedding spent numerous hours looking for a dress with Plaintiff,

Yewande Oteh.

125.     Plaintiff Yewande Oteh and her mother, after months, days and countless hours

wound up finding a dress at Alfred Angelo Bridal shop in Mt. Laurel New Jersey.

Plaintiff was elated to finally find a dress that matched her perfectly.

126.     Plaintiff was devastated by the actions of the flight attendants.

17

127.    Plaintiff failed to enjoy the wedding as she was in a dress that was not the one she spent months looking for.

128.    Plaintiff was unable to wear the accessories she had bought, as the time it took to piece the look together was not feasible in the limited time Plaintiff had, as well as the location of the wedding being out of the Country.

129.    Defendants were aware that the dress in the first class bin was for Plaintiffs destination wedding.

130.    Plaintiffs are still suffering from the actions of defendants.

131.    Despite being physically and mentally unable to partake in the numerous activities planned during the week, Plaintiff was unable to partake in her actual wedding in the way envisioned due to her being unable to properly breathe during the reception dinner, which is visibly obvious in the wedding video.

132.    Plaintiff was forced to retreat to a hotel room during the reception given the totality of circumstances surrounding defendant's actions.

133.    Plaintiffs missed part of their reception dinner due to the emotional and physical pain Plaintiff Yewande Oteh was experiencing. Visual in the actual wedding video

134.    Plaintiff is unable to take pride and joy in the wedding event as the defendant's actions overshadowed the entire wedding week.

135.    Plaintiffs wedding guests, family and friends were deprived of the joyous occasion due to defendant's actions.

136.    Defendant's responses have varied drastically; further confusing Plaintiffs and causing even more mental anguish.

137.     The stress from the events of the wedding took their toll on Plaintiff Yewande

         Oteh, causing Plaintiff to seek additional medical treatment.

## V.     CAUSES OF ACTION, DAMAGES AND REQUESTED RELIEF

138.     The event at the heart of this complaint cannot be defined as an accident within

         the meaning of Article 17of the Montreal Convention.

139.     Defendants engaged in the requisite intentional outrageous and extreme conduct

         which caused severe damage to Plaintiffs.

140.     Limited liability for damages will not apply to defendants as Plaintiff can

         factually show that the damage resulted from an act or omission by defendants,

         done with the intent to cause damage or recklessly and with knowledge that

         damage would probably result, and that this employee employed by defendants

         was acting within the scope of their employment.

141.     The damages sustained by Plaintiffs were solely due to the negligence and

         wrongful act of defendants, and not that of a third party.

142.     Despite defendant's employees and agents performing passenger services, the

         intentional actions done by defendants employees and servants fell outside the

         scope of their employment description and was not the type of service

         contemplated by congress under any of the federal statutes and/or law claims.

143.     Defendant's failed to investigate the Plaintiff's formal complaint against its

         employees, agents, servants and/or representatives.

144.    Defendant's negligence, disregard for passenger safety, and failure to oversee that its agents are trained properly and transport passengers and cargo in the manner intended proximately caused the accident and Plaintiffs injuries.

145.    Defendants' were at all relevant times a common carrier and owed Plaintiffs the highest degree of care.

146.    Defendants' breached their duties to Plaintiffs and is strictly liable to Plaintiffs for their full measure of damages.

**COUNT I**
**NEGLIGENCE**

147.    Plaintiffs repeat the allegations of the proceeding paragraphs as though set forth herein at length.

148.    The misconduct of defendants constituted acts of an abuse of power and breach of duty owed to Plaintiffs.

149.    Airlines and air carriers are held to a higher standard of care for their passengers.

150.    Airlines and air carriers must exercise vigilance in all aspects of aviation.

151.    The reckless and careless behavior was attributable to defendants and actually and proximately caused Plaintiff's injuries.

152.    As a direct and proximate result of defendants breach of duty owed to Plaintiffs have sustained serious personal injuries including, but not limited to; bodily injury, resulting pain and suffering, loss of capacity for the enjoyment of life, medical treatment, loss of income, medical expenses expected to be ongoing, and other damages.

153.    As a direct and proximate result of American's conduct, Plaintiffs sustained damages as a result of the serious personal injuries sustained by simply being passengers on Flight 832.

154.    The injuries arose directly from the relationship with the defendants as the common carrier and are attributable to the latter negligence.

155.    Defendants owed Plaintiffs a standard of care not only to specific regulations but also to the overall scope of refraining from operating an aircraft in a careless or reckless manner.

156.    This standard of care expands to encompass the issue of whether the overall operation or conduct in question was careless or reckless not just specific areas.

157.    This standard of care encompasses serious flagrant misconduct, and egregious conduct. Defendants' actions are attributable to such misconduct.

158.    Defendants breached a duty owed to Plaintiff by engaging in such flagrant and egregious conduct.

159.    Defendants breached a duty of care owed to Plaintiffs by ignoring the actions of their flight crew, and condoning behavior despite glaring evidence of unconscionable conduct.

160.    The actions of defendants shocked the conscious so severely that the consequences of their actions caused immediate physical injury and severe mental anguish. In addition, Defendants failed to properly rectify the actions through its available resources, for which Plaintiffs are entitled to and hereby seeks all damages.

**WHEREFORE**, Plaintiffs demand judgment against defendants and seeks damages in a sum in excess of $750,000.00 together with costs, interest, and attorney's fees.

**WHEREFORE**, Plaintiffs demand judgment against defendants, for their full measure of compensatory damages, costs and such other relief as this court deems appropriate and seeks damages in a sum in excess of $100,000.00 together with costs, interest, punitive damages and attorney's fees.

**COUNT II.**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

161.   Plaintiffs repeat the allegations of the proceeding paragraphs as though set forth herein at length.

162.   Defendants conduct was extreme and outrageous.

163.   The defendant's employee intended for the conduct to inflict severe emotional distress and knew that there was a high probability that her conduct would cause severe emotional distress.

164.   The nature of defendant's acts went beyond all possible bounds of decency and is utterly intolerable in a civilized community.

165.   A wedding is a once in a lifetime event. The destruction of an important event such as this is one that no reasonable person could be expected to endure.

166.   The probability that severe emotional distress would follow the conduct of the defendants is evident, and that defendants went ahead in conscious disregard of that probability cannot be ignored.

167.     Defendants breached that duty of care by ignoring the actions of their flight crew, and condoning behavior despite glaring evidence of unconscionable conduct.

168.     As a proximate and direct cause of Defendants' negligent conduct, Plaintiff sustained physical and emotional injuries, embarrassment, humiliation and loss of income opportunities.

169.     During the events of August 14, 2015, Plaintiff was harassed and laughed at by American Airlines Pilot and American Airlines Flight crew as she was visibly distraught and emotionally distraught. Plaintiff immediately exhibited stress-related behaviors that rationalized her commitment for justice and relief; she was agitated, tearful, severely emotional and angry.

170.     Defendants knew or should have known about the severe risk of its failure to take any appropriate precautions in light of the characteristics of actions of their employees.

171.     Defendants, after learning of the event failed to properly rectify the actions of its employees, and instead attempted to deny any wrongdoing or involvement despite glaring evidence to the contrary.

172.     Defendants asserted that they properly conducted an investigation, which defendants have failed to show proof of.

173.     Defendants and their employees, who are entrusted with the lives of thousands daily to assure the safety of all passengers and cargo acted in reckless disregard towards Plaintiffs' safety, cargo and priceless cargo. Defendants intentional actions of inflicting emotional distress of this nature is equivalent to a tortious act towards plaintiff's personal body.

**WHEREFORE**, Plaintiffs demand judgment against defendants and seeks damages in a sum in excess of $750,000.00 together with costs, interest, and attorney's fees.

**WHEREFORE**, Plaintiffs demand judgment against defendants, for their full measure of compensatory damages, costs and such other relief as this court deems appropriate and seeks damages in a sum in excess of $100,000.00 together with costs, interest, punitive damages and attorney's fees.

**COUNT III**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (NIED)**

174.    Plaintiffs repeat the allegations of the proceeding paragraphs as though set forth herein at length.

175.    A special contractual and fiduciary relationship existed between defendants and Plaintiffs.

176.    This special relationship created an implied duty on the part of the defendants to care for the emotional well-being of the Plaintiffs.

177.    Defendants breached this implied duty of care, and Plaintiffs suffered extreme and emotional distress as a result of the defendants' breach of that duty.

178.    Defendants breached their duty of care to Plaintiffs as passengers under their care.

179.    Plaintiff was cruelly acted against and as a result, Plaintiff's wedding gown was mutilated by action of Defendants.

180.    Defendants failed to implement its policy and/or resolve the matter by any other means at its disposal.

181.     Defendants' conduct was extreme and outrageous and caused Plaintiffs bodily

injury and severe emotional distress as described above.

**WHEREFORE**, Plaintiffs demand judgment against defendants and seeks

damages in a sum in excess of $750,000.00 together with costs, interest, and attorney's

fees.

**WHEREFORE**, Plaintiffs demand judgment against defendants, for their full

measure of compensatory damages, costs and such other relief as this court deems

appropriate and seeks damages in a sum in excess of $100,000.00 together with costs,

interest, punitive damages and attorney's fees.

**COUNT IV**
**NEGLIGENT HIRING AND NEGLIGENT RETENTION**

182.     Plaintiffs repeat the allegations of the proceeding paragraphs as though set forth

herein at length.

183.     Defendants American Airlines Inc. and US Airways are liable for the harm

resulting from its employees negligent and intentional acts.

184.     Defendants knew or should have known of the unfitness, incompetence and

dangerous attributes of their employee.

185.     Defendants could have reasonably foreseen that said employee exhibited such

qualities that created a risk of harm to others.

186.     Through defendants hiring of American Airlines Flight Attendant "Melanie", said

employees dangerous characteristics proximately caused the injury to Plaintiffs.

187.     The conduct of defendant's employee forms the basis of the cause of action.

188.  Defendants were made aware of said employees conduct, and claims contained herein and failed to properly investigate or discipline said employee.

**WHEREFORE**, Plaintiffs demand judgment against defendants and seeks damages in a sum in excess of $750,000.00 together with costs, interest, and attorney's fees.

**WHEREFORE**, Plaintiffs demand judgment against defendants, for their full measure of compensatory damages, costs and such other relief as this court deems appropriate and seeks damages in a sum in excess of $100,000.00 together with costs, interest, punitive damages and attorney's fees.

**COUNT V**
**UNJUST ENRICHMENT AGAINST DEFENDANT AMERICAN AIRLINES**

189.  Plaintiffs repeat the allegations of the proceeding paragraphs as though set forth herein at length.

190.  The doctrine of unjust enrichment is essentially equitable in nature.

191.  In the present case, Defendants destroyed Plaintiffs Wedding gown on an international flight, causing immediate severe physical and mental anguish.

192.  Plaintiffs purchased tickets through American Airline; searched for tickets for the guests, which several traveled on American Airlines, for a wedding and joyous occasion that was ruined, without providing Plaintiff the flight travel, protection, and joyous wedding for which they paid for. Rather defendants' actions ruined the entire occasion for Plaintiffs and their guests and family.

193.  Defendants failed to adhere to the standards and duty of care imposed by carriers.

194.     But for Plaintiffs purchasing the American Airlines Ticket, removing her dress at the advice of American Airlines personnel, and throughout no fault of their own, having the dress destroyed viciously by defendants actions, has deprived Plaintiffs of any enjoyment of their wedding day, and continues to plague Plaintiffs presently.

195.     Equity requires that defendants be required to return the money that it received for the plane tickets of all who traveled on their airline for the special occasion as well as the subsequent damage caused by their actions

196.     Plaintiffs' once in a lifetime wedding events were ruined in a vicious manner at the hands of defendants which was so vicious that it shocks the conscious.

197.     Defendants accepted money in exchange for providing Plaintiffs and their property free from intentional egregious misconduct.

198.     In turn, defendants failed to offer Plaintiffs the essential terms of the bargain.

199.     Defendants accepted and retained the benefits.

200.     Under the circumstances of this case, it would be inequitable for defendants to retain the benefit without payment for value.

201.     It would be inequitable to allow American and US Airways to ignore its obligations and benefit from the plane tickets and wedding expenses Plaintiff paid for to her detriment.

202.     In addition, it would be inequitable to allow American and US Airways to escape liability for the intentional actions of its employees which caused devastating and expensive consequences to no fault of Plaintiffs.

203.     Plaintiffs are entitled to a return of their entire wedding expenses.

**WHEREFORE**, Plaintiffs demand judgment against defendants and seeks damages in a sum in excess of $750,000.00 together with costs, interest, and attorney's fees.

**WHEREFORE**, Plaintiffs demand judgment against defendants, for their full measure of compensatory damages, costs and such other relief as this court deems appropriate and seeks damages in a sum in excess of $100,000.00 together with costs, interest, punitive damages and attorney's fees.

Dated: August 12, 2017

Respectfully submitted,

/S/ Yvette Sterling

_____

Yvette C. Sterling, Esq.
STERLING LAW FIRM
Attorney for Plaintiffs

## **CERTIFICATION PURUSANT TO RUL 4:5-1**

     I hereby certify that the matter in controversy is not the subject of any other action

pending in any Court or of a pending arbitration proceeding, and that no action or arbitration

proceeding is contemplated.

Dated: August 12, 2017

                                    Respectfully submitted,

                                    /S/Yvette Sterling

                                    _____

                                    Yvette C. Sterling, Esq.
                                    STERLING LAW FIRM
                                    Attorney for Plaintiffs

  DATED: August 12, 2017

DEMAND FOR JURY TRIAL

   Pursuant to Federal Rule of Civil Procedure 38Plaintiff hereby demands a trial by jury as to all
issues.

                                      /S/ Yvette Sterling_____
                                    Yvette C. Sterling Esq.

  DATED: August 12, 2017

DESIGNATION OF TRIAL COUNSEL

Yvette C. Sterling, Esq. is designated trial counsels in this matter.

/S/Yvette C Sterling

Yvette C. Sterling

DATED: August 12, 2017

## DEMAND FOR PRODUCTION OF INSURANCE AGREEMENTS

Plaintiff demand that you disclose to the undersigned whether there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy all or part of a judgment which may be entered in the action or to indemnify or reimburse for payment made to satisfy the judgment. If so, please attach a copy of each, or in the alternative state, under oath and certification: (a) policy number; (b) name and address of insurer; (c) inception and expiration date; (d) names and addresses of all persons insured thereunder; (e) personal injury limits; (f) property damage limits; and (g) medical payment limits.

/S/ Yvette Sterling

Yvette C. Sterling, Esq.

DATED:  August 12, 2017